**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AURIKA A. GRYNKO,** ) | Case No.  1:13 CV 2482 |
| ) | |
| **Plaintiff,** ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **SEARS ROEBUCK AND CO.,** ) | |
| ) | |
| **Defendant.** ) | |

Before the Court is Defendant Sears, Roebuck and Co.,'s Motion to Stay Proceedings and Compel Arbitration ("Motion").  (Doc #: 4.)  For the following reasons, the Court **GRANTS** the Motion and dismisses the case **without prejudice** so that Plaintiff Aurika A. Grynko may pursue her claims against Defendant through the agreed binding arbitration process.

**I. Background**

On November 08, 2013, *Pro Se* Plaintiff Aurika Grynko filed this case against her employer, Defendant Sears, Roebuck and Co., (hereafter, "Sears"). (Doc #: 1 ("Comp.")) Plaintiff works as a Merchandise Assistant at a Sears retail store in North Olmstead, Ohio. Plaintiff's Complaint alleges that Sears discriminated against her because of her national origin. Plaintiff's Complaint sets forth four causes of action against Sears; 1) employment discrimination based upon national origin under Title VII of the Civil Rights Act of 1964 (Count One); 2) employment discrimination and hostile work environment under 42 U.S.C. § 1983 (Count Two); 3) conspiracy to deprive Plaintiff of equal rights and protection under law under 18 U.S.C. § 1241 and; 4) intentional infliction of emotional distress.  Plaintiff seeks back pay in

the amount of $200,000, punitive damages, compensatory damages and other relief.

On December 2, 2013, Sears filed the pending Motion and Declaration of Roberta Kaselitz (Doc # 4). The pending Motion and Declaration allege the following facts. Sears maintains various personnel records through a Human Resources Management Systems known as "PeopleSoft." (Doc. # 4-1 at ¶ 3, Declaration of Roberta Kaselitz). Within the information maintained in PeopleSoft are records of employees' receipt of employment practices and their participation in online training programs administered by Sears. (R. Kaselitz, ¶ 4).

During the week of April 2, 2012, Sears introduced an Arbitration Policy/Agreement (the"Agreement" or "Arbitration or Agreement") pursuant to which participating associates and Sears each waived their right to pursue employment-related claims in court, agreeing instead to submit such disputes to binding arbitration. (R. Kaselitz, ¶ 5). The Agreement provides, in pertinent part:

> Under this Agreement, and subject to certain exceptions specified within within the Agreement, **all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below**. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company. [Introduction para 1)
>
> \* \* \* \* \* \*
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below**. [Introduction para 3] (Emphasis added.)

(R. Kaselitz, ¶ 8).

Prior to September 14, 2012, Sears employees acknowledged their receipt of various

employment policies using Sears' "My Personal Information"("MPI") online portal. (R. Kaselitz, ¶ 7). Employees logged into the MPI portal using a unique ID and Password. (R. Kaselitz, ¶ 8). These acknowledgement were completed on the "SHC Policy Acknowledgments" page. Prior to September 14, 2012, employees were required to complete a series of policy acknowledgments in the MPI portal, including the Arbitration Agreement. A link to the Agreement appeared in red colored font on the SHC Policy Acknowledgments page. (R. Kaselitz, ¶ 12). Upon clicking the link for the acknowledgement of the Agreement, the user was brought to a page containing four additional links, labeled (i) Arbitration Policy/Agreement (PDF); (ii) Arbitration Policy/Agreement (Text); (iii) Opt Out form Action is required to protect your legal rights to sue the Company in court and/or to participate in any way in a class action, collective action or representative action; and (iv) Acknowledgement receipt of the Arbitration Policy/Agreement. (R. Kaselitz, ¶ 13).

After reviewing the Agreement and Opt Out form, associates were asked to acknowledge their receipt of the Agreement by clicking on the "Acknowledge receipt of the Arbitration Policy/Agreement" link. (R. Kaselitz, ¶ 14). Upon clicking on the acknowledgement link, the employee received the following message:

> **By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.** (Emphasis added.)

(R. Kaselitz, ¶ 15). To submit their acknowledgement, associates were required to click the "Yes" button and then click "Submit." ( R. Kaselitz, ¶ 16). Following their acceptance of

the Agreement, employees were provided with a 30-day window to opt out of the Agreement. (R. Kaselitz, ¶ 18). An employee who timely chose to opt out of the Agreement could do so by mailing or faxing the properly completed Opt Out form to the address and/or fax number listed on the form. (R. Kaselitz, ¶ 19). The PeopleSoft system is automatically updated to reflect an associate's decision to opt out of the Agreement. (R. Kaselitz, ¶ 20).

On April 27, 2012, Plaintiff acknowledged receipt of the Agreement by clicking "Yes" and "Submit" on the Agreement's acknowledgement page. (R. Kaselitz, ¶ 23). Plaintiff's acknowledgment that she received the Agreement is reflected on her Review Training Summary in PeopleSoft. (R. Kaselitz, ¶ 24). Plaintiffs' Review Training Summary indicates a "Start Date" of February 3, 2012, the date the Arbitration Policy/Agreement "Course'" was created, and a "End Date" of April 27, 2012, the date Plaintiff acknowledged receipt of the Agreement. Id. In addition, the "Attendance" section reads "Acknowledged." Id. If Plaintiff had chosen to opt-out of the Agreement, the "Attendance" section would read "Opt-Out." (R. Kaselitz, ¶ 26).[1]

On December 10, 2013, Plaintiff filed a Brief in Opposition to Defendant's Motion to Compel Arbitration (Doc. #6). In her Opposition Brief, Plaintiff alleges the following facts. On April 27, 2012, in the presence of HR lead Barakz, Plaintiff signed and faxed an opt-out form to Sears' Legal Intake. Plaintiff's first attempt to fax the form was unsuccessful as evidenced by the "error" notation on the fax's confirmation page. After two minutes, the fax machine started redialing and Barakz told Plaintiff that she was "ok", but Barakz did not provide her with a confirmation page. On the following day, Plaintiff faxed Sears' Legal Intake another

---

[1] A copy of the PeopleSoft screenshot reflecting Plaintiff's receipt and acknowledgement of the Agreement is attached to the Kaselitz Declaration as Exhibit C, and a copy of an exemplar PeopleSoft screenshot showing what a screenshot would look like for an employee who decided to opt out of the Agreement is attached to the Kaselitz Declaration as Exhibit D.

-4-

Opt-Out Form using her friend's fax machine, and on April 30, 2012 she mailed a copy of the Opt-Out Form to Sears' Legal Intake.

## II. Analysis

### A. Legal Standard

The Federal Arbitration Act (FAA) embodies a clear federal policy requiring arbitration unless the agreement to arbitrate itself is revocable. *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). When evaluating a motion to compel arbitration, the Court must engage in a limited review to determine whether the dispute is arbitrable. *Javitch v. First Union Securities, Inc.* 315 F.3d 619, 624 (6th Cir. 2003). The first step of that review is to determine if a valid agreement to arbitrate exists between the parties. *Muhammad v. Bedford Nissan, Inc.,* 2012 WL 33010, * 3 (N.D. Ohio Jan.6, 2012) (citation omitted). If a valid arbitration agreement exists, the court must determine if the specific dispute falls within the substantive scope of the agreement. *Id.* If the court determines that the existence of a valid arbitration agreement is not "in issue", it must compel arbitration. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002) (citing 9 U.S.C. § 4.). However, if the existence of a valid arbitration agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. *Id.* "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Cos.,* 288 F.3d at 889 (citation omitted). Therefore, a court must view all facts and inferences in the light most favorable to the party opposing arbitration, and determine whether a valid agreement to arbitrate exists. *Id.*

**B. Analysis**

Here, Plaintiff sets forth four separate arguments as to why the Arbitration Agreement does not apply to her claims : 1) she never agreed to arbitrate her claims; 2) she opted-out of the Agreement; 3) the Agreement is procedurally and substantively unconscionable and; 4) her "conspiracy" claim is not subject to arbitration because it involves third parties not subject to the Agreement. Therefore, the Court must determine whether Plaintiff has raised a genuine issue of material fact as to whether a valid and enforceable agreement to arbitrate exists. Upon reviewing all of the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff has failed to meet this burden.

The first question that the Court must decide is whether Plaintiff agreed to arbitrate her claims. "Because arbitration agreements are fundamentally contracts, [federal courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc*., 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). State contract law governs "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 393 (6th Cir.2003) (citations omitted).

Plaintiff argues the Agreement is not "enforceable absent a signed agreement between the parties." However, an arbitration agreement does not have to be signed in order to be valid and enforceable. *Dantz v. Apple Ohio LLC,* 277 F. Supp.2d 794, 801 (N.D. Ohio 2003) (citing *Brumm v. McDonald & Co. Securities, Inc.,* 78 Ohio App. 3d 96, 603 N.E. 2d 1141 (Ohio App. 4., 1992) (noting that "federal courts have consistently held that, to enforce an arbitration clause,

-6-

it is only necessary that the provision be in writing and that it is not required that such writing be signed"). Under Ohio law, the "essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object or consideration." *Kostelnick v. Helper*, 96 Ohio St.3d 1, 770 N.E.2d 58, 61 (Ohio 2002) (citation omitted). Because Plaintiff claims that she did not agree or consent to the Agreement, the Court must determine whether the "acceptance" element has been satisfied.

In her Opposition Brief, Plaintiff claims that on April 27, 2012 she refused to agree to the online version of the Agreement because Sears did not allocate time for reading the Agreement. As noted above, after an employee reviews the Agreement and Opt-Out Form they are asked to acknowledge their receipt of the Agreement by clicking on the "Acknowledge receipt of the Arbitration Policy/Agreement" link. (R. Kaselitz, ¶ 14). Upon clicking on the acknowledgement link, the employee receives a message that reads, in part, : " I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement." ( Id. at ¶ 15). Once an employee completes the acknowledgement in the MPI portal, People Soft is automatically updated to reflect the employee's receipt and acknowledgment of the Agreement. A document attached to Kaselitz' Declaration as Exhibit C, a screenshot of Plaintiff's Review Training Summary in PeopleSoft, indicates that Plaintiff acknowledged receiving the Agreement; the document has an "Attendance" section next to which it reads "Acknowledged." Plaintiff does not account for this document or offer any explanation as to why it would indicate that she had acknowledged receiving the Agreement if she in fact had not acknowledged receiving the Agreement. Therefore, the Court finds that Plaintiff has not met her burden of

raising a genuine issue of material fact as to whether she agreed to arbitrate.

The Second question for the Court to decide is whether Plaintiff opted-out of the agreement to arbitrate. On December 19, 2013, Sears filed a Reply Brief along with an affidavit of Trevor Torrence, an employee of Sears Holdings Management Corporation who is familiar with the tracking and receipt of the employee opt-out forms that Sears uses (Doc. #7).

By the terms of the Agreement, an employee who opts-out of the Agreement is not bound by its terms. In her Opposition Brief, Plaintiff claims that she opted out of the Agreement. In support, Plaintiff filed an affidavit claiming that she faxed or mailed the opt-out form to Sears' Legal Intake. However, as Defendant points out, the affidavit is unsupported by any proof in the way of documentation or other evidence showing that a fax or mailing was sent. The only documentation that Plaintiff has provided is a confirmation page from a fax that was sent to Sears on April 27, 2012. By Plaintiff's own admission, the confirmation page indicates that the fax did not go through. The confirmation page lists the number of fax pages as "zero", and next to "Result" it reads "Send Error." Plaintiff claims that she made three more attempts to send Sears her signed Opt-Out Form. Plaintiff claims that after the first unsuccessful attempt, the fax machine started redialing and HR lead Barakz told her that she was "ok". Plaintiff claims that on the following day she faxed Sears' Legal Intake her Opt-Out Form using her friend's fax machine, and that on April 30, 2012 she mailed a copy of the Opt-Out Form to Sears.

Other than her affidavit, Plaintiff has provided nothing to support her claim that she faxed Sears her signed Opt-Out Form on April 28, 2012 or that she mailed the form on April 30, 2012. As Defendant recognizes, under federal law, the common law mailbox rule applies when

-8-

there is a question regarding whether a mailed document was received by the addressee. The proper and timely mailing of a document raises a presumption that the document was received by the addressee. *Caroll v. Comm'r* 71 F.3d 1228, 1232 (6th Cir. 1995). The presumption arises upon proof that the document was "properly addressed, had sufficient postage, and was deposited in the mail." *In re: Yoder Co.,* 758 F.2d 1114, 1118 (6th Cir. 1985) (citation omitted). Here, Plaintiff has not provided any proof that she mailed the Opt-Out Form to Sears on April, 30, 2012.

Furthermore, Mr. Torrence reviewed Sears' records in an attempt to locate the Opt-Out Form that Plaintiff claims she sent to Sears. (Doc # 7-1 at ¶ 3). Mr. Torrence reviewed all opt-outs received via fax on or about April 27-28, 2012 and all opt-outs received in the mail from late April to early May 2012, and was unable to locate any opt-out forms from Plaintiff. *Id.* In addition, he checked the list that Sears maintains of all opt-outs that were rejected because they were not received in a timely basis and was unable to locate any opt-out for Plaintiff. Finally, Mr. Torrence checked all unidentified [2] opt-outs in Sears' possession and was able to confirm that Plaintiff's was not mistakenly placed in this "unidentified" category. *Id.* at ¶ 4. In light of his inability to find a opt-out form from Plaintiff, and based on his knowledge of Sears' opt-out system, Mr. Torrence has stated to a " reasonable degree of certainty that [Sears] has no record of receiving an opt-out form from Plaintiff". *Id.* at ¶ 4.

Upon a review of the facts, the Court finds that Plaintiff has not met her burden of raising a genuine issue of material fact as to whether she sent Sears an Opt-Out Form.

---

[2] "Unidentified opt-outs" consist of opt-out forms which Sears has received but has been unable to link to anyone in PeopleSoft.

The third issue before the Court is whether the Agreement is procedurally and substantively unconscionable, and thus constitutes an unenforceable contract.  Under Ohio law, "unconscionability of a contract is an affirmative defense to a claim brought on a contract." *Deutsche Bank Natl. Trust Co. v. Pevarski,* 187 Ohio App.3d 455, 932 N.E.2d 887, 894 (2010) (citations omitted).  "Unconscionability consists of both an absence of meaningful choice for the party opposing enforceability of the agreement (procedural unconscionability) combined with contract terms that are unreasonably favorable to the other party (substantive unconscionability)." *Stachurski v. DirectTV, Inc.,* 642 F.Supp.2d 758, 767 (N.D. Ohio 2009) (citing *Hayes v. Oakridge Home,* 122 Ohio St. 3d 63, 908 N.E.2d 408 (2009).  In order to demonstrate that the Agreement is unenforceable, Plaintiff must prove it is substantively and procedurally unconscionable.  *Id.*

Plaintiff argues that the Agreement is procedurally unconscionable for two reasons.  First, the Agreement does not allow employees to "negotiate the terms or conditions" of the Agreement, and, second, employees' acknowledgment and receipt of the Agreement on their Review Training Summary in PeopleSoft is referred to as "Course Title", which Plaintiff argues is misleading.  (R. Kaselitz, ¶ 20).  The Court disagrees.  As to the first reason, if an employee does not agree with the terms or conditions of the Agreement she can opt out of the Agreement.  Therefore, the sole fact that the Agreement does not include a provision allowing employees to "negotiate [its] terms or conditions" does not render the contract unconscionable.  As to the second reason, the Court fails to see how the "Course Title" label in employees' Review Training Summary in PeopleSoft is misleading.  As detailed above, in order for an employee to have acknowledged receipt of the Agreement she is required to click "Yes" and "Submit" on a

page that is clearly labeled "Arbitration Policy/Agreement." The fact that an employee's Review Training Summary refers to such acknowledgement as "Course Title" does not make the acknowledgement misleading.

Plaintiff also argues that the Agreement is substantively unconscionable because it lacks mutuality. (Doc. # 8 at 4). In support of her argument, Plaintiff cites *Batory v. Sears, Roebuck and Co.,* 456 F. Supp. 2d 1137 ( D. Ariz. 2006). In *Batory,* the district court held that the arbitration agreement at issue lacked mutuality because it required employees to arbitrate all "covered claims", but did not require the employer to arbitrate claims against its employees. *Id.* at 1140. Here, the Agreement specifically requires Sears to arbitrate covered claims against its employees. *See* Arbitration Agreement at p.1, Doc. # 4-1, Exh. A ("This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company."). Therefore, the Agreement does not lack mutuality and is not unconscionable on this ground.

While Plaintiff does not argue that the Agreement's provisions concerning fees is a basis for finding that the Agreement is unconscionable, the Court has independently reviewed these provisions. The Payment provision requires Sears to pay the arbitrator's fees, if it is required to do so by law. (Arbitration Agreement at p.4, Doc. # 4-1, Exh. A). If Sears is not required to do so by law, then payment of the arbitrator's fees shall be governed by the rules of the organization that administers the arbitration. Id. If the organization or arbitrator does not have rules pertaining to the payment of fees, then Sears shall pay the arbitrator's fees. Id. As for attorney's fees, the Agreement provides that the "arbitrator may award any party any remedy to which that party is entitled under applicable law... but such remedies shall be limited to those

-11-

that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by that arbitrator." Id. at 5. Plaintiff could therefore recover her attorney's fees should she prevail on her federal employment discrimination claims. Accordingly, the Court finds that these fee provisions do not unreasonably favor Sears, and, therefore, are not unconscionable.

On December 30, 2013, Plaintiff filed a Brief in Response to Defendant's Reply Brief (Doc. # 8). In Plaintiff's Brief, she cites *Kmart Corp.*, Case No. 06-CA-091823, a November 19, 2013 decision by Administrative Law Judge David Goldman. In *Kmart Corp.,* Judge Goldman concluded that Respondent Kmart violated Section 8(a)(1) of the National Labor Relations Act by maintaining an arbitration policy under which employees waive the right to maintain collective actions in all forums, and which is applicable to all employees who fail to opt out of the arbitration policy. The Sears Arbitration agreement includes the same prohibition against collective actions. However, Plaintiff is bringing her case on an individual basis and is not attempting to pursue her case as a collective action. Therefore, the enforceability of the class action wavier is not an issue that is currently before the Court.

Finally, Plaintiff argues that her alleged conspiracy claim is not subject to arbitration because it involves third parties not subject to the Agreement. Whether or not Plaintiff has sufficiently alleged a conspiracy claim under 18 U.S.C. 241 is not for the Court to decide. The Court's review is limited to determining whether "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir.2003). The Agreement specifically states that it applies to disputes regarding discrimination, harassment and claims arising under

Civil Rights Act of 1964. (Arbitration Agreement at p.1, Doc. # 4-1, Exh. A). Here, Plaintiff's Complaint alleges that Sears conspired with its employees and "others currently unknown to Plaintiff" to deprive her of "equal protection of the laws and of equal privileges and immunities under the laws, as further set forth in Count I.." (Complaint, Doc. # 1 at ¶ 48). The Sixth Circuit has held that under the law of conspiracy a corporation cannot conspire with itself. *See Hull v. Cuyahoga Valley Joint Vocational School District,* 926 F.2d 505, 509 (6th Cir.1991). Plaintiff has not identified any Defendant other than Sears, and her claims against Sears are clearly covered by the Agreement.

### III.

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Stay Proceedings and Compel Arbitration. The case is dismissed without prejudice so that Plaintiff may pursue her claims against the Defendant through arbitration, as required by the Agreement.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster 1/6/14*
**Dan Aaron Polster**
**United States District Judge**